Dieter M. HUGEL, Gulf Coast Marine, Incorporated, and Ocean Marine Indemnity Company, Plaintiffs–Appellants,

v.

The CORPORATION OF LLOYD'S, a United Kingdom Corporation, Defendant–Appellee.

No. 92–2240.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1992.

Decided July 8, 1993.

Jean Marie R. Pechette, Gordon & Glickson, Chicago, IL, William Edelman (argued), New Orleans, LA, for plaintiffs-appellants.

Timothy M. Maggio, Joseph E. ·Coughlin (argued), Lord, Bissell & Brook, Chicago, IL, for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and LAY, Senior Circuit Judge.*

LAY, Senior Circuit Judge.

Dieter Hugel, Gulf Coast Marine, Inc., and Ocean Marine and Indemnity Company appeal the dismissals of their diversity suit

---

* Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation.

against the Corporation of Lloyd's. The district court dismissed the suit under Fed. R.Civ.P. 12(b)(3) on the ground that plaintiffs' claims are governed by a forum selection clause designating England as the proper forum. We affirm.

## FACTS

Dieter Hugel is an individual domiciled in New Orleans. He is the President and Chairman of Gulf Coast Marine, Incorporated (GCM) and Ocean Marine Indemnity Company (OMI).[1] GCM is an insurance brokerage firm with principal office in New Orleans. OMI is a subsidiary of GCM.

In 1978, Hugel became a member of the Corporation of Lloyd's, operator of one of the oldest and largest insurance markets in the world. As an individual underwriting investor in Lloyd's, Hugel invested in insurance syndicates that operate at Lloyd's and underwrite Lloyd's of London insurance policies.[2] In order to be considered for membership, an individual must be financially solvent and must enter into a General Undertaking for Membership. Upon renewing his membership in 1987, Hugel signed a General Undertaking that included both forum selection and choice of law clauses in which the parties "irrevocably" agreed that the law and the courts of England will govern "any dispute or controversy of whatsoever nature arising out of or relating to the Member membership . . . ."

In February 1988, based on suspicions that Hugel and GCM were involved in criminal misconduct, Lloyd's initiated an internal disciplinary proceeding against Hugel.[3] Hugel cooperated with the investigation by providing testimony and documents to Lloyd's relating to GCM and OMI. Plaintiffs allege that Lloyd's made certain assurances that the existence and subject matter of the investigation and all information obtained would be held in absolute confidence. At the close of the investigation, the Lloyd's investigators concluded that there was "no evidence" of misconduct.

Plaintiffs claim they lost business as the result of Lloyd's breach of confidentiality relating to the investigation. They filed suit in the United States District Court for the Northern District of Illinois, Western Division, seeking damages from Lloyd's alleged breach of contract, breach of fiduciary duty, invasion of privacy and tortious interference with business relationships, all arising from disclosures Lloyd's allegedly made despite "assurances of confidentiality" given during the investigation. Upon the findings of recommendation of the magistrate, the district court, the Honorable Stanley K. Roszkowski, refused to exercise jurisdiction over the suit, holding the scope of an enforceable forum selection clause required the courts of England to hear the subject matter of the dispute.

## DISCUSSION

■ Our review of the applicability and enforceability of the forum selection clause is *de novo.* See, e.g., *Northwestern Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 375 (7th Cir. 1990); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).[4]

1. Hugel owns 99% of the stock of GCM and 100% of the stock of OMI.

2. Members of Lloyd's associate within various syndicates of their choice which provide insurance coverage for customers throughout the world. Each member is liable for an agreed upon share of the risks insured by each syndicate.

3. An internal trust account audit revealed the presence of significant surplus funds belonging to GCM. Further investigation disclosed that between 1980 and 1988, reinsurance on certain risks was placed in the Lloyd's market initially through Hinton Gulf Coast Marine and then through Delta Marine and Aviation Insurance Brokers Limited (Delta). Gulf Coast Marine re-

mitted to Delta an amount substantially in excess of what was needed to pay the premiums payable in the London market. Delta sent these monies to an account in Stuttgart, Germany in the name of Mrs. Anna Hugel. Mrs. Anna Hugel is Mr. Hugel's mother. These transactions were recorded in Delta's books through an account named "Mrs. A. Hugel—Commission Account" even though Mrs. Hugel had no connection to the insurance industry. These monies were then used by Mr. Hugel to make payments on a yacht under construction in Hong Kong. The total amount transmitted to Hong Kong via this mechanism from 1980 to 1984 was $994,412.21.

4. Some circuits review the district court's enforcement of a forum selection clause under an

## I.

The forum selection clause which the parties executed in the General Undertaking for Membership states that "the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of *whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business* at, Lloyd's...." (Emphasis added.) Thus, the material issue is whether the plaintiffs' claims relate to Hugel's membership in Lloyd's.

The plaintiffs' claims concern Lloyd's disclosure of confidential information during and after its investigation of certain business transactions of Mr. Hugel. They urge that this disclosure was not related in any way to their membership in Lloyd's. Plaintiffs contend that the dispute does not arise out of any underwriting of the insurance business and does not require an interpretation of the General Undertaking Agreement. In becoming a member of the Society of Lloyd's, Hugel agreed to abide by the comprehensive scheme of regulations concerning membership. In exchange for being allowed to underwrite insurance, Hugel, in executing the General Undertaking, agreed to "comply with the provisions of Lloyd's Acts 1871–1982, any subordinate legislation made or to be made thereunder and any ... requirement made or imposed by the Council [of Lloyd's] or any person(s) or body acting on its behalf...." The General Undertaking specifically requires compliance with membership Bylaw No. 9 of 1984, which prescribes certain requirements as "a continuing condition of membership of, and underwriting insurance business at, Lloyd's."

Lloyd's Bylaw No. 3 of 1983 authorizes the Council to direct inquiries "concerning the suitability, conduct or affairs of any member of the Society...." It expressly mentions "frauds, crimes, malpractices or misconduct as defined in these byelaws ... in connection with the business of insurance at Lloyd's or in any way related thereto." Lloyd's Bylaw

No. 5 of 1983 provides that a member is guilty of misconduct if he:

> (d) conducts himself ... in a manner which is detrimental to the interests of Lloyd's policyholders, [or] the Society ...;
>
> (e) conducts any insurance business in a discreditable manner or with a lack of good faith, or
>
> (f) conducts himself ... in any manner whatever which is dishonorable or disgraceful or improper.

If a verdict of misconduct is returned against a member, the Society may exclude or suspend him from membership or require the member to cease underwriting at Lloyd's in part or in total, either permanently or temporarily. Bylaw No. 5(2)(a).

Plaintiff claims that the investigation was unrelated to his membership because it was an investigation of private commercial conduct, wholly unrelated to any act undertaken by Hugel in his capacity as, by reason of, or under color of his Lloyd's membership. He claims to be a "passive investor" who did not expect scrutiny of his personal or business transactions unrelated to his Lloyd's business. Hugel likens his relationship with Lloyd's to that of a stockholder of Sears Roebuck, whose sole criteria for investment is financial.

We find this argument unpersuasive. Becoming a member of Lloyd's is not the same as investing in a mutual fund or buying stock in a publicly held corporation. The Society of Lloyd's members are selected according to certain prescribed criteria, including whether an individual is a "suitable person to be a member of the Society." Bylaw 9 of 1984, sec. 5. Lloyd's bylaws clearly indicate that the Society is concerned about the moral fitness of its members. Nothing in the bylaws limits this criteria to conduct directly involving a Lloyd's insurance underwriting transaction.

■ The district court found that Lloyd's had the authority to investigate Hugel be-

---

abuse of discretion standard. *See Spradlin v. Lear Siegler Management Servs. Co.,* 926 F.2d 865, 867 (9th Cir.1991); *Taag Linhas Aereas de Angola v. Transamerica Airlines, Inc.,* 915 F.2d 1351, 1353 (9th Cir.1990); *Sun World Lines, Ltd. v. March Shipping Corp.,* 801 F.2d 1066, 1068 n. 3 (8th Cir.1986).

cause, as a member, Hugel had agreed to abide by Lloyd's rules. We agree with the district court that if Hugel were not a member of Lloyd's, there would not have been an investigation. Indeed the plaintiffs offer no other explanation for why Lloyd's would have conducted the investigation if not to determine Hugel's eligibility for continuing membership.[5] Thus, we believe it follows like the night following the day that any dispute that arose from this investigation must be considered related to Hugel's membership and thereby within the scope of the forum selection clause.

Plaintiffs argue that Lloyd's alleged "assurances of confidentiality" constitute a contract separate from the General Undertaking, and that the present claims arise from that separate contract to which the forum selection clause does not apply. We do not agree. The investigation itself is intertwined with the membership requirements referred to by the General Undertaking such that the oral promises or assurances made in the course of the investigation cannot be considered a separate unrelated contract. The record indicates that any alleged "assurances of confidentiality" were derived from Bylaw 4 of 1983,[6] one of the rules promulgated pursuant to the Lloyd's Act of 1982 which the General Undertaking incorporates by its terms. There is no other evidence within the record of "assurances of confidentiality" other than the bylaws themselves.

Finally, plaintiffs argue that their claim for tortious interference with a business relationship is a tort claim not covered by the forum selection clause. Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action. As the Third Circuit has held, "where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation]." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).

We hold that all of the plaintiffs' claims arise from the contractual relationship and are therefore within the scope of the forum selection clause. In choosing to become a Member of Lloyd's, Hugel signed the General Undertaking in which he promised to be bound by Lloyd's membership regulations. He cannot avoid this agreement by arguing that the forum selection clause should apply to nothing more than disputes concerning his membership duties relating exclusively to insurance underwriting.

## II.

GCM and OMI assert that only Hugel is bound by the forum selection clause because GCM and OMI are not and never have been parties to the General Undertaking.

In order to bind a non-party to a forum selection clause, the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound. *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988); *Coastal Steel*, 709 F.2d at 203.[7] Hugel is President

---

**5.** In his affidavit, plaintiffs' counsel admitted: 31. The activities of the Lloyd's Members and Lloyd's syndicates in Illinois are further subject to regulation and Byelaws which are issued and enforced by the Corporation of Lloyd's. A failure to adhere to this code of conduct can result in disciplinary action ... 32. *Investigatory Role.* The Corporation of Lloyd's investigates allegations of misconduct against members who are citizens in Illinois. If the Corporation of Lloyd's believes misconduct to have occurred, it, through its Advisory Department and Solicitors Department, will initiate disciplinary proceedings against the Member for the purpose of fining, sanctioning and/or expelling the Member....

**6.** Bylaw 4 of 1983 states:

*Information and Confidentiality*
The Council may at any time require that any member of the Society ... give or produce to the Council any information, documents or other material relating to the business of insurance at Lloyd's or to any person or persons involved in or connected with such business or any other information, documents or other material which the Council may consider necessary or appropriate to be given or produced ...

**7.** Plaintiffs argue that the court must make a threshold finding that a non-party to a contract is a third-party beneficiary before binding him to a forum selection clause. While it may be true that third-party beneficiaries of a contract would,

and Chairman of the Board of both GCM and OMI. In addition, Hugel owns 99% of the stock of GCM which, in turn, owns 100% of the stock of OMI. The alleged assurances of confidentiality were made to Hugel alone and Hugel alone decided that his corporations would participate in Lloyd's investigation.

Hugel and Lloyd's contracted to settle all of their disputes in England. Although GCM and OMI were not members of Lloyd's, in the course of a dispute between Hugel and Lloyd's, Hugel alone involved his two controlled corporations and supplied information allegedly belonging to those corporations. The district court found that the corporations owned and controlled by Hugel are so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue. We hold these findings are not clearly erroneous.

### III.

■ Plaintiffs argue that the forum selection clause should not be enforced because it allegedly deprives them of certain remedies. Plaintiffs claim that if they are compelled to bring this suit in England, they will be barred from pursuing their claims absent a showing of "bad faith" by the Lloyd's investigators because the Lloyd's Act of 1982 grants to Lloyd's immunity from civil suit.[8] We initially observe that the plaintiffs confuse the choice of law provision *requiring the application of English law* with the forum selection clause. We note that because the General Undertaking designates English law,

the parties would be governed by the same law (including those limited by the Lloyd's Act of 1982) whether they brought the suit in federal district court in Illinois or in England.

In *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Court observed: "a freely negotiated private international agreement, unaffected by fraud, undue influence or overweening bargaining power ... should be given full effect." *Id.* at 12–13, 92 S.Ct. at 1915. The Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be *'unreasonable' under the circumstances.*" *Id.* at 10, 92 S.Ct. at 1913 (emphasis added). The Court considered a number of factors that made it reasonable to enforce a forum selection clause. Among the factors the Court considered were 1) whether the international agreement was affected by fraud, undue influence or overweening bargaining power, and 2) whether the contractual forum was a serious inconvenience for one or both parties. *Id.* at 12, 16, 92 S.Ct. at 1914, 1917; *see also Carnival Cruise Lines v. Shute*, 499 U.S. 585, ——, 111 S.Ct. 1522, 1526, 113 L.Ed.2d 622 (1991).

Here there is no claim of fraud, undue influence, or overreaching, and plaintiffs state that inconvenience is not the issue.

Plaintiffs urge that compelling them to litigate in England deprives them of remedies and that this makes England a forum so "gravely difficult and inconvenient as to deprive them of their day in court." *See Bre-*

---

by definition, satisfy the "closely related" and "foreseeability" requirements, *see e.g., Coastal Steel*, 709 F.2d at 203 (refusing to absolve a third-party beneficiary from the strictures of a forum selection clause which was foreseeable); *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill. 1984), a third-party beneficiary status is not required.

8. Section 14(3) of the Act provides:
   Subject to subsections (1), (4), and (5) of this section, the Society shall not be liable for damages whether for negligence or other tort, breach of duty or otherwise, in respect of any exercise of or omission to exercise any power, duty or function conferred or imposed by Lloyd's Acts 1871 to 1982 or any byelaw or regulation made thereunder—

(d) in so far as relates to the exercise of, or omission to exercise; disciplinary functions, powers and duties or
(e) in so far as relates to the exercise of, or omission to exercise, any powers, functions or duties under byelaws made pursuant to paragraphs (21), (22), (23), (24) and (25) of Schedule 2 to this Act;
unless the act or omission complained of—
   (i) was done or omitted to be done in bad faith; or
   (ii) was that of an employee of the Society and occurred in the course of the employee carrying out routine or clerical duties, that is to say duties which do not involve the exercise of any discretion.

*men,* 407 U.S. at 18, 92 S.Ct. at 1917. Such an argument misconstrues the law. *Bremen* focused specifically on logistical inconvenience. *Id.* at 19, 92 S.Ct. at 1918. The substantive law that applies to a particular dispute is a choice of law issue that is determined either by the enforcement of a valid choice of law clause in the contract or, in absence of a choice of law clause, by the choice of law laws of the particular forum. In the recent Second Circuit case of *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir.1993), Chief Judge Meskill observed in language highly appropriate to the disposition of this case:

> It defies reason to suggest that a plaintiff may circumvent forum selection ... merely by stating claims under laws not recognized by the forum selected in the agreement. A plaintiff simply would have to allege violations of *his country's* tort law or *his country's* statutory law or *his country's* property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction. We refuse to allow a party's solemn promise to be defeated by artful pleading. In the absence of other considerations, the agreement to submit to ... the jurisdiction of the English courts must be enforced even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum.

(Citation omitted.)

Here, the General Undertaking expressly specifies that disputes will be governed by English law. Plaintiffs have only challenged the enforceability of the forum selection clause and not the choice of law clause. We conclude that Hugel has not met his burden of proving the clause unreasonable under the circumstances.

JUDGMENT AFFIRMED.