**CONTINENTAL GRAIN EXPORT CORPORATION, Plaintiff,**

v.

**MINISTRY OF WAR–ETKA CO. LTD. and the Islamic Republic of Iran, Defendants.**

**No. 84 Civ. 1566(CBM).**

United States District Court, S.D. New York.

Dec. 12, 1984.

---

Baker & McKenzie by Robert B. Davidson, Diana Lurie Boersma, New York City, for plaintiff.

Fenwick, Stone, Davis & West by Richard D. Gaines, Ann Goldstein-Bleicher, New York City, for defendants.

## OPINION

MOTLEY, Chief Judge.

This is an action for breach of contract. Plaintiff Continental Grain Export Corporation (Continental), a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York brings this action to recover demurrage costs against defendants Ministry of War-Etka Co. Ltd. (Etka) and The Islamic Republic of Iran (Iran). Jurisdiction is asserted under 28 U.S.C. § 1603 and 28 U.S.C. § 1602 et seq.

This action is now before the court on defendants Etka's and Iran's motion to dismiss on the ground that the court is without subject matter jurisdiction to hear the action under an international agreement. Defendants raise the motion to dismiss pursuant to an order to show cause in order to preserve their rights to move against the complaint on other grounds. For the reasons stated below, defendants' motion to dismiss is denied.

FACTS

Continental alleges that in May and June of 1978, it entered into two contracts with Etka to sell rice. Each contract provided that demurrage at the port of discharge would be for the buyer's account. Continental alleges that it incurred demurrage costs in the amount of $408,691.33. It contends that Etka has refused to pay this claim. Iran has guaranteed the payment of Etka's debts and obligations pursuant to a statute entitled the "Law Concerning the Guarantee of Payment of Installments of Contracts for Consumption Cooperatives and the Iranian Armed Forces [ETKA] and Foreign Sellers by the Ministry of Finance."

On November 4, 1979, the American Embassy in Tehran was seized. A national

emergency was declared on November 14, 1979 by President Carter and resulted in the blocking of the removal or transfer of "all property and interests in property of the Government of Iran, its instrumentalities and controlled entities which were subject to the jurisdiction of the United States" pursuant to the International Emergency Economic Powers Act. Executive Order No. 12170, 3 C.F.R. 457 (1980). The Secretary of the Treasury promulgated implementing regulations, which provided, that "[u]nless licensed or authorized ... an attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which on or since [November 14, 1979] there existed an interest of Iran." 31 C.F.R. § 535.203(e) (1980).

On January 19, 1981, the governments of the United States and Iran entered into an agreement called the Declarations of the Democratic and Popular Republic of Algeria and Declaration of the Government of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the United States of America and the Government of the Islamic Republic of Iran (Accords). The purpose served by the Accords was "to terminate all litigation as between the Government of each party and the nationals of the other, and to bring about the settlement and termination of all such claims through binding arbitration."

Under the Accords, the United States agreed:

> to terminate all legal proceedings in the United States courts involving claims of United States persons and institutions against Iran and its state enterprises, to nullify all attachments and judgments obtained therein, to prohibit all further litigation based on such claims, and to bring about the termination of such claims through binding arbitration.

On February 24, 1981, President Reagan issued an Executive Order in which he ratified the Executive Orders issued by President Carter. Executive Order No. 12294, 46 Fed.Reg. 14111. Moreover, he "sus-pended" all claims which may be presented to the Tribunal and provided that such claims "shall have no legal effect in any action now pending in any court of the United States." *Dames & Moore v. Regan,* 453 U.S. 654 at 662–66, 101 S.Ct. 2972 at 2977–80, 69 L.Ed.2d 918 (1980). The suspension of any particular claim terminates if the Claims Tribunal determines that it has no jurisdiction over that claim; claims are discharged for all purposes when the Claims Tribunal either awards some recovery and that amount is paid, or determines that no recovery is due. *Id.* (footnotes omitted).

Executive Order 12294 provides:

Section 1. All claims which may be presented to the Iran-United States Claims Tribunal under the terms of Article II of the Declaration of the Government of the Democratic and Popular Republic of Algeria Concerning the Settlement of Claims by the Government of the Islamic Republic of Iran, and *all claims for equitable or other judicial relief in connection with such claims, are hereby suspended, except as they are presented to the Tribunal.* During the period of this suspension, all such claims shall have no legal effect in any action now pending in any court of the United States, including the courts of any state or any locality thereof, the District of Columbia and Puerto Rico, or in any action commenced in any such court after the effective date of this Order. Nothing in this action precluded the commencement of an action after the effective date of the Order for the purpose of tolling the period of limitations for commencement of such action.

Section 3. *Suspension under this Order of a claim or a portion thereof submitted to the Iran-United States Claims Tribunal for adjudication shall terminate upon a determination by the Tribunal that it does not have jurisdiction over such claim or such portion thereof.* (Emphasis added).

On October 19, 1981, Continental commenced an arbitration proceeding before

the Tribunal. The Tribunal dismissed the action on the ground that it lacked jurisdiction under Article II(1) of the Accords. Article II(1) provides:

An International Arbitral Tribunal (the Iran-United States Claims Tribunal) is hereby established for the purpose of deciding claims of nationals of the United States against Iran and claims of nationals of Iran against the United States, and any counterclaim which arises out of the same contract, transaction or occurrence that constitutes the subject matter or that nationals claim, if such claims and counterclaims are outstanding on the date of this agreement, whether or not filed with any court, and arise out of debts, contracts ... *excluding claims arising under a binding contract between the parties specifically providing that any disputes thereunder shall be within the sole jurisdiction of the competent Iranian courts in response to the Majlis position.* (Emphasis added).

The contracts in dispute contain forum selection clauses which provide: "Any dispute which is not settled in a friendly manner will be referred to the Iranian legal authorities."

DISCUSSION

Defendants contend that (1) the Accords provide for the termination of all litigation in the United States courts; (2) the interpretation of the Accords is a political question thereby precluding the United States courts from adjudicating the case; (3) the plaintiff's claim is one of the numerous claims brought against the United States in the Claims Tribunal for the breach of the Accords for its failure to terminate all litigation in the United States courts; and (4) the forum selection clauses in the contracts grant jurisdiction over the dispute solely to the Iranian courts.

1. *Jurisdiction*

■ The issue before the court is whether the United States courts have jurisdiction under the terms of the Accords to adjudicate claims held to be outside the jurisdictional grant of the Claims Tribunal because the claims arise from a contract dispute and the contract expressly provides for resolution of the dispute by the Iranian legal authorities.

In *Dames & Moore v. Regan,* 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1980) [hereinafter "Dames & Moore"], the Supreme Court upheld the constitutionality of the President's Executive Order 12294. Moreover, the Court stated:

[W]e do not believe that the President has attempted to divest the federal courts of jurisdiction. Executive Order No. 12294 purports only to "suspend" the claims, not divest the federal court of "jurisdiction." As we read the Executive Order, those claims not within the jurisdiction of the Claims Tribunal will "revive" and become judicially enforceable in United States courts. 453 U.S. at 684–85, 101 S.Ct. at 2989.

Similarly, the Claims Tribunal stated, in *Esphahanian v. Bank Tejarat,* Award No. 31–157–2 (March 29, 1983), "[i]n a case where the Tribunal decides that it lacks jurisdiction, litigation in national courts could be resumed, but the original attachments would not be resurrected."

Several courts have followed that Supreme Court's interpretation of the Executive Order that the Claims Tribunal's lack of jurisdiction over excluded claims does not preclude the United States courts from hearing such cases.

In *Jafari v. Islamic Republic of Iran,* 539 F.Supp. 209 (N.D.Ill.1982) the court held that it was without jurisdiction to hear plaintiff's claim against the government of Iran on the ground that the plaintiff had a pending claim before the Claims Tribunal. The court relied on the Supreme Court's interpretation of the Executive Order in *Dames & Moore* and dismissed the plaintiff's claim "at least and unless and until the Tribunal were to reject jurisdiction." 539 F.Supp. at 212–13. Similarly, in *Security Pacific National Bank v. Government and State of Iran,* 513 F.Supp. 864 (1981) the district court transferred the plaintiff's claim to the Claims Tribunal with leave to

reopen the action should the Claims Tribunal determine that it lacks jurisdiction.

In *Unidyne Corporation v. Government of Iran,* 512 F.Supp. 705 (E.D.Va. 1981), the district court denied the United States government's motion to stay the proceeding where the court determined that there was nothing indicating whether the case was within or without the jurisdiction of the Claims Tribunal. The court stated:

> [t]he jurisdiction of the court is not challenged by any party at this time. The question of a stay is within the sound discretion of the court. And the court sees no reason to order a stay at this time.... Nor does the denial of the stay impede the establishment of the international tribunal and the lodging of claims there. Allowing the matter to go forward here does protect plaintiff's rights should its claim not be arbitrable and in the event that changed circumstances alter the availability of the tribunal. *Id.* at 710–11.

Under *Dames & Moore,* the United States courts have jurisdiction to adjudicate cases specifically excluded from the Tribunal's jurisdiction.

## NO POLITICAL QUESTION AT ISSUE

■ Defendants contend that the dispute before this court requires an interpretation of the Accords and is in essence a political question. The issue before the court is whether it has jurisdiction over a claim by the United States national where the Claims Tribunal has no jurisdiction because the claim is one in which the Accords expressly excluded from the tribunal's jurisdiction. The court does not have to interpret the Accords to resolve the jurisdictional question. Rather, the court must follow the Executive Order 12294 as upheld and interpreted by the Supreme Court in *Dames & Moore.*

Defendants further contend that the Accords provide for the termination rather than the mere suspension of all litigation in the United States courts. In addition, defendants contend that the plaintiff's claim is presently before the Claims Tribunal brought by the Government of Iran against the United States for breach of the Accords for its failure to terminate all litigation in the United States.

The Declaration of the Government of the Democratic and Popular Republic of Algeria provides:

> If any other dispute arises between the parties as to the interpretation or performance of any provision of this declaration, either party may submit the dispute to binding arbitration by the tribunal established by, and in accordance with the provisions of, the claims settlement agreement.

The defendants argue that dismissal is required because the fundamental issue, whether this court may adjudicate claims dismissed by the Claims Tribunal for lack of jurisdiction, is properly before the Tribunal (Claim A–15).

The Government of Iran in claim A–15 asserts that the United States has failed to terminate legal proceedings in its courts involving claims of the United States nationals and institutions against the government of Iran. It contends that the mere suspension, rather than termination, violates the terms of the Accords. In addition, the Government of Iran objects to the adjudication of counterclaims asserted against the Government of Iran in cases brought by the Government of Iran in the United States courts.

The Fifth Circuit, in *Electronic Data Systems Corporation Iran v. Social Security Organization of the Government of Iran,* 651 F.2d 1007 (5th Cir.1981), suspended an action where plaintiffs received a judgment against the Government of Iran prior to the freeze on Iranian assets and the issuance of the Executive Order. In addition, the court was presented with the issue whether the Accords require nullification of attachments obtained before the Accords. The defendants argued that the resolution of the issue involved interpreting the Accords and that under the terms of the Accords only the Claims Tribunal had jurisdiction to decide the issue.

The court preserved the status quo by permitting the attachment to be maintained pending litigation before the Claims Tribunal. The court stated:

> We express no view as to whether the Declarations require the nullification of the EDS attachments. It is for the United States government, not this court, to determine, in the first instance, the extent of its obligations under the Declarations.... If Iran believes that the United States has interpreted the Declarations incorrectly, it must make its argument before the Claims Tribunal. When the Tribunal announces the proper interpretation, an effort to implement that decision in American courts will then be appropriate. *Id.* at 1011.

It is this court's position that defendants' motion to dismiss must be denied. This court must follow Executive Order 12294 as upheld by the Supreme Court in *Dames & Moore.* Should the court grant the motion to dismiss, contrary to defendants' argument, it would be engaging in the determination of a political question, that of interpreting the terms of the Accords.

## ENFORCEMENT OF FORUM–SELECTION CLAUSES

■ Defendants contend that the forum selection clauses of the contracts require the dispute to be heard by an Iranian court.

The Supreme Court in *M/S Bremen v. Zapata Offshore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1971) has held that a choice of forum clause should be enforced unless it can be shown that "enforcement would be unreasonable and unjust."

Several courts have followed *Bremen* holding that an Iranian court would not afford a United States plaintiff a fair and full hearing. *See Rockwell International Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583, 587–88 (2d Cir.1983) (post-revolutionary Iranian judicial system is incapable of affording an adequate remedy); *American Bell International, Inc. v. The Islamic Republic of Iran,* 474 F.Supp. 420, 423 (S.D.N.Y.1979) ("[t]here is credible evidence that the Islamic Republic is xenophobic and anti-American and that it has no regard for consulting service contracts such as the one here. Although Bell has made no effort to invoke the aid of the Iranian courts, we think the current situation in Iran, as shown by the evidence, warrants the conclusion that an attempt by Bell to resort to those courts would be futile").

In *McDonnell Douglas Corporation v. Islamic Republic of Iran,* 591 F.Supp. 293 (E.D.Mo.1984) plaintiffs contended that the conditions of the Iranian legal system rendered Iran an inappropriate forum for the resolution of the dispute. The court relied on the plaintiff's affidavits in concluding that the Iranian legal forum was inappropriate.

> MDC contends that the Iranian legal system has undergone a radical transformation in recent years. Specifically, MDC asserts that there has been a wholesale renunciation of the principles of Western jurisprudence in favor of Islamic legal precepts; that Iran has replaced experienced secular judges with theological students; that Iranian attorneys are unwilling to accept United States clients because of fear of persecution; and that the Iranian government has sponsored anti-American campaigns. These alleged conditions lead plaintiff to conclude that the current Iranian legal system is inadequate for, and ill disposed to, fairly adjudicate the contractual dispute between the parties. Thus, the forum selection clause should not be enforced.

## CONCLUSION

Defendants have not offered to demonstrate that the legal system of Iran is now substantially different from that described in the recent opinion of the court in the *McDonnell Douglas* case. Defendant in the *McDonnell-Douglas* case is the same as defendant here. Since defendants have not rebutted plaintiff's claim that trial in Iran would be unreasonable and unjust, the motion to dismiss for lack of jurisdiction must be denied.