**Rosemarie MARRA, et al., Plaintiffs,**

v.

**Vaso PAPANDREOU, et al., Defendants.**

**Civil Action No. 96–1535(RMU).**

United States District Court,
District of Columbia.

July 28, 1999.

---

Mark H. Alcott, Robert W. Trenchart, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiffs.

Richard L. Brusca, Rachel Mariner, Skadden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, for defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

### Granting the Defendants' Motion to Dismiss the Complaint

## I. INTRODUCTION

This matter comes before the court upon the motion of the defendants, former Greek Prime Minister Vaso Papandreou, the Ministry of Tourism of Greece and the Greek National Tourist Organization, to dismiss the complaint of the plaintiffs, Rosemarie Marra and Marrecon Enterprises, S.A. Defendants seek to dismiss the complaint on the grounds that the District of Columbia is a *forum non conveniens* and that the parties' contract selected Greece as the forum for disputes related to the contract. For the reasons which follow, the court holds that according to the plaintiffs' own translation of the contract, the forum-selection clause is both enforceable and applicable. Accordingly, the court will grant summary judgment to the defendants on the ground of the forum-selection clause. The court does not reach the defendant's request to dismiss the complaint on the ground of *forum non conveniens*.

## II. BACKGROUND

### A. The Parties

The plaintiffs in this action are Marrecon Enterprises, S.A., a Liberian corporation with its principal place of business in New York ("Marrecon") and its sole shareholder, Rosemarie Marra, who is a citizen and resident of New York. *See* Compl. ¶¶ 4, 5. The defendants are the Greek Minister of Tourism Vaso Papandreou, the Ministry of Tourism of Greece ("the Ministry") and the Greek National Tourist Organization ("GNTO") (collectively, "the Greek government"). The GNTO is owned and operated by the Greek government. *See* Compl. ¶ 8.

The Greek government revoked a casino license which had been granted to Marrecon and its partners. Marra alleges that the revocation breached the Greek government's contract with Marrecon and its partners and unlawfully expropriated their property.

### B. The Solicitation, Submission and Approval of Casino License Bids

On April 20, 1994, Greece promulgated Law No. 2206 ("Law 2206"), authorizing a bidding process for ten casino licenses. *See* Mot. to Dis. filed January 29, 1999 ("Mot. to Dis."), Ex. A. Also in April 1994, Greece sent tourism officials to meet with potential casino investors in Manhattan. *See* Compl. ¶ 14. The Greek government

also advertised in United States periodicals to induce American investors to bid for the licenses. *See* Compl. ¶¶ 2, 16.

Pursuant to Law 2206, the Minister of Tourism issued "Resolution 920" on June 6, 1994. Resolution 920 announced a competition for casino licenses and required bidders to submit bids, written in Greek, to the Ministry in Athens. *See* Brusca Dec., Ex B ¶ 4. Bidders were required to deposit two million drachmas with the Bank of Greece. *See id.* ¶ 7.2.

On September 9, 1994, Marrecon and six corporate partners ("the consortium") jointly submitted a bid for a license to develop and operate a casino/hotel/marina complex in the Flisvos district of Attica.[1] On January 31, 1995, the Ministry awarded a license to the consortium. *See id.,* Ex. G. Resolution 37 contained a forum-selection and choice-of-law clause.

In January 1995, the consortium paid a license fee of eleven billion drachmas ($44 million). *See* Compl. ¶¶ 3, 18. Under the terms of Law 2206 and the consortium's license, the Greek government was entitled to receive annual license-renewal fees, 30% of the casino's gross revenue, and a convention center constructed by the consortium. *See* Marra Dec.[2] ¶ 23. After thirty years, title to the casino, marina and hotel would pass to the government. *See id.* ¶ 19.

## C. The Revocation of the Consortium's Casino License

In October 1995, the Prime Minister resigned and his successor appointed defendant Papandreou as Minister of Development. *See* Marra Dec. ¶ 40. On February 7, 1996, Marra alleges, Minister Papandreou publicly stated that she would honor all agreements entered into by her predecessor. *See* Compl. ¶ 20. In March 1996, the Greek State Council issued an opinion that the resolution awarding the casino licenses (Resolution 37) was revocable under Greek law. *See* Brusca Dec., Ex. H at 15–18, 20–23. Likewise, the Government License Committee issued an opinion stating that Resolution 37 was not legal. *See id.,* Ex. I at 6. On May 21, 1996, the Minister retroactively revoked the consortium's license. *See* Compl. ¶ 21. The government proffered five reasons in support of the revocation, all turning on the interpretation of Greek law.

In October 1996, the Greek government refunded the $41 million license fee paid by the consortium (without interest for the 21 months the Greek government held the funds).

## D. Procedural History of this Action

Marra filed suit in this court in June 1996, alleging breach of contract and unlawful expropriation. *See* Compl. ¶¶ 23–26. Marra seeks $1.6 billion in damages, plus interest, costs and attorneys fees. The Greek government moved to dismiss the complaint on the grounds that the action is barred by (1) the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611; (2) the Act of State doctrine; (3) the doctrine of *forum non conveniens;* (4) lack of standing; and (5) lack of personal jurisdiction.

---

1. Attica Prefecture is the Greek state where Athens is located. An agreement executed in Athens in late 1994 formed the Athens Casino Consortium, which was organized under the Greek civil code. *See* Brusca Dec., Ex. E ¶¶ 3, 6, 10–11. The consortium consists of seven corporations, none incorporated in the United States. Four Greek corporations hold a combined 80% stake. Another 10% is held by Marra's corporations, which are incorporated in Liberia and Luxembourg, respectively. The remaining 10% is held by a British

Virgin Islands corporation. *See* Brusca Dec., Ex. E. The consortium's seat is in Athens and its affairs are managed by a Greek corporation. *See id.* ¶ 8.

2. The plaintiffs submitted the declaration of Rosemarie Marra, plaintiff, as a freestanding document in opposition to the motion to dismiss, not as an exhibit to their brief in opposition.

Subsequently Marra moved for permission to conduct discovery relating to the grounds asserted in the motion to dismiss. The requested discovery included depositions of high-ranking Greek officials. In September 1997 the court decided to determine FSIA jurisdiction before considering the government's other defenses. Accordingly, the court granted discovery on the FSIA issue (relating to the defendants' efforts to solicit casino investment funds in the United States). The court denied without prejudice the defendants' motion to dismiss.

In November 1997 the Greek government sought and received mandamus relief in the United States Court of Appeals for the District of Columbia Circuit. *See In re Minister Papandreou,* 139 F.3d 247 (D.C.Cir.1998). In June 1998, the Court of Appeals instructed this court to explore potentially dispositive non-FSIA jurisdictional defenses before ordering discovery of Greek officials on the FSIA issue. *See id.* at 254. After remand, this court stayed all discovery pending resolution of dispositive motions. The defendants then filed the instant motion.

### E. Actions in Greek Courts Concerning the Consortium's Casino License

In July 1996 the consortium itself filed a petition in a Greek administrative court to nullify the revocation of its license. *See id.,* Ex. O. In January 1997, the court denied the petition, *see id.* at p. 27, and the consortium appealed. *See id.,* Ex. P. In addition, the consortium filed an action in Greek civil court seeking compensation. The civil court denied the requested relief and the consortium has appealed. Both appeals are still pending. *See id.* ¶¶ 1, 2.

## III. ANALYSIS

The defendants contend that the complaint must be dismissed on the grounds that a contractual forum-selection clause requires Marra to litigate this matter in Greece. In support of that motion, the defendants submit exhibits which go far beyond the pleadings; likewise, plaintiffs' opposition relies upon affidavits and other exhibits. Accordingly, the court treats the motion as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b); Fed.R.Civ.P. 56.

### A. The Standard for Summary Judgment

Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party. is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the non-moving party has failed to offer sufficient evidence to support a valid claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the nonmovant to establish a "mere ... scintilla of evidence in support of [its] position ...; there must be evidence on which the jury could reasonably find" for the nonmovant. *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

### B. Contractual Forum–Selection Clause

The defendants contend that the forum-selection clause in the license agreement

requires the plaintiffs to litigate this matter in Greece. For the reasons which follow, the court agrees.

### 1. Should the Defendants Be Estopped from Invoking the Forum–Selection Clause?

■ Marra contends that the Greek government should be estopped from invoking the forum-selection clause, maintaining that "the defendants illegally revoked the very license they purport to rely on for this forum selection clause, and ... the alleged reasons for revocation are not valid ones identified in the license." Opp. to Mot. to Dis. at 23. This argument "puts the cart before the horse." For this argument to succeed, the court would have to hold that the defendants unlawfully revoked the consortium's license. That would require the court to reach the merits of the plaintiffs' claims. The court cannot reach the merits of those claims, however, until and unless it finds that the forum-selection clause does not apply.

A District Court in New York rejected the same argument raised by the plaintiffs here:

> This Court finds no merit to the plaintiffs' argument that [the defendant] should be precluded from invoking provisions of the contract before this Court because [the defendant] has allegedly repudiated the contract. The plaintiffs' action against [the defendant] arises under the contract. The mere fact that [the defendant] in its defense alleges that it properly terminated the contract with [the plaintiff] does not preclude [the defendant] from looking to the contract for all purposes in this action. [The defendant] is therefore not estopped from invoking any venue provisions found to exist in the contract.

*Contacare, USA, Inc. v. Laboratoires Contapharm*, 1986 WL 3504, *2 (W.D.N.Y. 1986). Accordingly, the defendants are not estopped from invoking the forum-selection clause.

### 2. Enforceability of the Forum–Selection Clause

■ Because the defendants are not estopped from invoking the clause, the court must determine whether it is enforceable. In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court held that forum-selection clauses are *"prima facie* valid and should be enforced unless enforcement is shown ... to be 'unreasonable' under the circumstances." *See id.* at 9–10, 92 S.Ct. 1907. Indeed, "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring). The court concludes that this is not such an exceptional case.

■ The presumption in favor of enforcing a forum-selection clause applies even if the clause was not the product of negotiation. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991); *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 768 (D.C.Cir.1992). The court will enforce a forum-selection clause unless the opposing party demonstrates that (1) formation of the clause was tainted by fraud or overreaching; (2) enforcement would effectively deprive the complaining party of his day in court or deprive him of any remedy; or (3) enforcement would contravene a strong public policy of the forum state. *See Bremen*, 407 U.S. at 12–13, 15–18, 92 S.Ct. 1907. The court concludes that none of these exceptions to enforceability applies.

#### a. Voluntariness of Forum–Selection Clause

■ First, Marra has not alleged, nor does the record disclose any evidence that the forum-selection clause was the product of "fraud or coercion." [3] "[D]uress is any

---

**3.** The plaintiffs contend that the consortium

entered into the license agreement in reliance

wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment ...." *Sind v. Pollin*, 356 A.2d 653, 656 (D.C.1976) (citation and internal quotation omitted). Marrecon bid for and received the casino license as part of a multinational consortium of seven corporations; the transaction was an arm's-length transaction negotiated by well-financed parties with the advice of counsel.[4] Indeed, the plaintiffs argue that the forum-selection clause does not apply, not that it is unenforceable. Even if the government had threatened not to sign the agreement unless the consortium consented to the clause, that would not constitute duress. *Cf. Overseas Partners v. PRO-GEN Musavirlik ve Yonetim*, 15 F.Supp.2d 47, 53 (D.D.C.1998).

### b. The Plaintiffs Have Not Shown that Enforcement of the Clause Will Unfairly Deprive Them of Any Remedy in Greek Court

#### i. *Jurisdiction and Fairness of Greek Courts*

Second, the plaintiffs have not demonstrated that enforcement of the clause will "deprive them of any remedy." In making this determination, the court conducts the same analysis used to determine whether there is an "adequate alternative forum" in the *forum non conveniens* context.

Ordinarily, a foreign court provides an adequate forum "when the defendant is amenable to process in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative .... Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). *See, e.g., North Branch Prods. v. Fisher*, 284 F.2d 611 (D.C.Cir.1960) (district court should not have dismissed Michigan corporation's complaint against Canadian resident where it did not appear that Canadian court would have subject-matter jurisdiction or that plaintiff would be able to obtain jurisdiction over defendant in Michigan), *cert. den.*, 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961). It is clear that the defendants are amenable to process in Greece and that the Greek courts have subject-matter jurisdiction. This is evidenced by the fact that the consortium, of which plaintiff Marrecon is a member, has prosecuted actions in Greek courts which assert a breach-of-contract claim against the defendants. *See* Brusca Dec., Ex. O. The Greek courts exercised jurisdiction and reached the merits of those actions. *See id.*, Ex. P. *See generally Bank of Crete v. Koskotas*, 1991 WL 280714, *1 (S.D.N.Y.1991) (jurisdiction established by fact that defendant "is a resident of Greece and has already been sued in Greek courts").

Furthermore, the plaintiffs have not alleged that Greek law does not provide a cause of action for breach of contract or for unlawful expropriation of private prop-

on the Greek government's (inaccurate) assurance that only lawful licenses would be issued, i.e. its license would not be revoked on the ground that it was unlawfully granted. Even if that is true, that would not show that the forum-selection clause specifically was the product of fraud. "A claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection or choice-of-law clause found in that contract. Rather, it is the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud." *Stamm v. Barclays Bank of*

*New York*, 1996 WL 614087 (S.D.N.Y.1996) (such fraud must be pled with particularity required by Fed.R.Civ.P. 9(c)), *mot. to certify app. den.*, 960 F.Supp. 724, 729 (S.D.N.Y. 1997).

4. Even if the Greek government possessed superior bargaining power vis-a-vis the consortium, that alone would not necessarily make the clause the product of duress. *See McNeill v. International Precious Metals*, 1989 WL 27443, *2 (4th Cir.1989).

erty. *Cf. Mendes Junior International Co. v. Banco Do Brasil, S.A.*, 15 F.Supp.2d 332, 337–38 (S.D.N.Y.1998) (Brazil was adequate forum even though plaintiff alleged that Brazilian law did not provide cause of action for breach of duty of good faith and fair dealing .or commercial reasonableness).

Lastly, the plaintiffs have not alleged that the Greek courts are hostile or biased such that they will not fairly consider the plaintiffs' claims. *See Continental Grain Export v. Ministry of War–Etka Co. Ltd.*, 603 F.Supp. 724, 729 (S.D.N.Y.1984) (refusing to enforce forum-selection clause which would have sent American litigants to Islamic revolutionary courts of Tehran).

### ii. *Greater Inconvenience and Cost of Suit in Greece*

■ This court recognizes, however, that the *ability* to bring suit in a foreign forum does not necessarily equate with the *ease* of doing so. Because the plaintiffs are opposing a motion for summary judgment, the court assumes, without deciding, that the plaintiffs will find it less convenient, more time-consuming and more expensive to litigate this dispute in Greece. Even so, the expense and inconvenience of litigating in a foreign forum does not render that forum inadequate. *See Overseas Partners*, 15 F.Supp.2d at 55 (Turkey was not rendered an inadequate forum by requirement that foreign plaintiffs post bond equal to 10% of amount at stake); *Effron v. Sun Line Cruises*, 67 F.3d 7, 10–11 (2d Cir.1995) ("[T]he costs and difficulties entailed in suing in Greece, being but the obvious concomitants of litigation abroad do not satisfy the *Bremen* standard."). "Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause." *Carnival Cruise Lines,*

111 S.Ct. at 1528. Moreover, the burdens to the plaintiffs of litigating in Greece, although undeniably significant—were or should have been readily apparent to plaintiff, a sophisticated commercial entity, at the time it agreed to the ... forum selection clause .... Apparently, at that point, plaintiff considered these obstacles to be manageable or it would not have entered into the contract. Plaintiff has not alleged that ... new factual circumstances, which could not have been reasonably foreseen at the time of contracting, have arisen.

*Id.See also Bremen,* 407 U.S. at 17–18, 92 S.Ct. 1907 (when "obstacle" to litigating in foreign forum was clearly foreseeable at time of contract, it was less persuasive). "[I]t would be unrealistic to think that the parties did not conduct their negotiations ... with the consequences of the forum clause figuring prominently in their calculations." *Id.* at 14, 92 S.Ct. 1907.

### iii. *Potential Preclusive Effect of Consortium's Actions*

■ The court rejects any suggestion that the plaintiffs would be unfairly "denied any remedy" in a Greek court because of the potential preclusive effect of the consortium's litigation there.[5] The plaintiffs might be bound by the Greek judgment as to any claim by the consortium that the revocation breached the license contract. Specifically, the plaintiffs might be bound by the Greek courts' rulings as to the validity of the government's stated reasons for revoking the license. But this court would not discern any injustice if the plaintiffs were bound by those rulings. Ms. Marra and her corporation could have asserted these claims in Greece and, as discussed below, the forum-selection clause required them to do so.

In any event, Ms. Marra emphasizes that she has two claims which could not have been decided in the consortium's

---

5. The court will not speculate as to whether or not the plaintiffs are bound by the judgments in the consortium's Greek litigation.

That issue is properly decided by the Greek courts under that nation's rules of claim and issue preclusion.

Greek litigation: (1) a claim for "compensation for a violation of international law [unlawful expropriation], a claim not available to my former partners as citizens of Greece against their own government" and (2) a claim for "unique damages by virtue of my sale of Interglobe stock to my former partners.[6]" *See* Marra Dec. ¶ 49. Accepting the plaintiffs' representation as true, the Greek courts have not yet considered those claims. Thus, even if the judgments in the consortium's Greek litigation are given preclusive effect against the plaintiffs, those judgments will not preclude their expropriation and stock-sale claims.

### iv. *Less Liberal Discovery and Witness Rules in Greece*

Marra contends that Greece is an inadequate forum because its rules of civil procedure restrict a party's ability to conduct discovery and call witnesses far more than the Federal Rules of Civil Procedure. Specifically, the plaintiffs contend that while a Greek judge has discretion to request that a party produce documents, "[n]on-compliance ... may lead to the imposition of ... [a] fine ... between ... $.30 and $3.00." Dec. of Prof. Kerameus dated April 5, 1999 ¶ 8. In addition, "witnesses cannot be forced either by the judge or by the opponent party to appear in court or, when appearing, to testify. The court is expected to charge—but, in fact, seldom does—the absent witness with the expenses of his non-appearance as well as a fine varying between ... $170 to $1,000." *Id.* ¶ 11. Lastly, under Greek law, "a party can call upon two witnesses at most ... [u]nder totally exceptional circumstances, and upon a showing of good cause, the court may increase the number to three." *Id.* ¶ 10. For purposes of this motion the court accepts the plaintiffs' characterization of Greek rules of civil procedure.

Even so, the cited features of Greek civil procedure will not deprive the plaintiffs of their "day in court" as that phrase has been traditionally understood. "[T]he right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard." *Olsen v. Muskegon Piston Ring Co.*, 117 F.2d 163, 165 (6th Cir.1941). A foreign forum is not inadequate unless its procedures are so deficient as to be "wholly devoid of due process." *ACLI Internat'l. v. Banque Populaire Suisse*, 652 F.Supp. 1289, 1295–96 (S.D.N.Y.1987); *accord Kempe v. Ocean Drilling & Exploration*, 683 F.Supp. 1064, 1067 (E.D.La.1988), *aff'd*, 876 F.2d 1138 (5th Cir.), *cert. den.*, 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989).

Consonant with this principle, the Court of Appeals for the District of Columbia Circuit has upheld enforcement of a forum-selection clause against an American plaintiff despite the plaintiff's objection that the foreign forum's discovery procedures were inadequate. *See Commerce Consultants Internat'l. v. Vetrerie Riunite*, 867 F.2d 697 (D.C.Cir.1989) (plaintiff required to litigate in Italy). Federal courts around the country overwhelmingly agree that a foreign forum's restrictive discovery or procedural rules do not render that forum inadequate. *See, e.g., PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 75 (2d Cir.1998) (Indonesia was adequate forum); *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir.1991) (Japan); *Monegro v. Rosa*, 1998 WL 556527, *4 to *5 (N.D.Cal.1998) (Dominican Republic), *recon. den.*, 1999 WL 38906 (N.D.Cal.1999); *Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835, 848 (D.N.J.1991); *Ernst v. Ernst*, 722 F.Supp. 61, 67 (S.D.N.Y.1989) (France). A foreign forum is not inadequate because of asserted deficiencies in

---

**6.** Ms. Marra sold the interest of her company, Interglobe, in the consortium. The sale, however, was contingent on the granting to the consortium of a valid license to operate a casino.

its discovery rules generally[7] or its documentary discovery rules in particular.[8] Nor is a foreign forum rendered inadequate because it offers little or no opportunity for depositions. *See Breindel & Ferstendig v. Willis Faber & Dumas Ltd.,* 1996 WL 413727 (S.D.N.Y.1996); *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1484 (9th Cir.1987), *cert. den.,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). The court will not conclude that Greece is an inadequate forum even if its discovery rules are substantially more restrictive than ours.[9]

██ Furthermore, a foreign forum may be adequate even if it does not permit American-style cross-examination at trial. *See Cliffs–Neddrill Turnkey International v. M/T Rich Duke,* 734 F.Supp. 142, 146 (D.Del.1990) (Netherlands was adequate forum despite absence of American-style discovery and cross-examination). Therefore, Greece is not an inadequate forum merely because it restricts the right to call witnesses more than United States rules do.

In short, the overwhelming consensus of the decisions is that "the unavailability of beneficial litigation procedures similar to those in federal district court does not render an alternative forum inadequate." *Scottish Air International v. British Caledonian Group,* 81 F.3d 1224, 1234 (2nd Cir.1996). The plaintiffs have not shown that the procedures of the Greek judicial system are so deficient as to constitute a complete denial of due process. Accordingly, this court joins other federal courts in finding that Greece is an adequate forum for litigation of the parties' rights. *See, e.g., Effron v. Sun Line Cruises,* 67 F.3d 7, 10–11 (2d Cir.1995); *Damigos v. Flanders Compania Naviera,* 716 F.Supp. 104 (S.D.N.Y.1989); *Hollander v. K–Lines Hellenic Cruises, S.A.,* 670 F.Supp. 563 (S.D.N.Y.1987).

### c. Enforcement of the Clause Must Not Contravene a Strong U.S. or D.C. Public Policy

██ Finally, the plaintiffs have not identified any "strong public policy" which would be violated by requiring them to abide by their contract.[10] To the contrary, federal common law reflects a strong policy of upholding forum-selection clauses for transactions which have contacts with more than one country. In the absence of such a clause, there would be considerable uncertainty as to the proper forum for the resolution of disputes concerning the license.

> Such uncertainty will almost invariably exist with respect to any contract touching two or more countries, each with its own substantive laws .... A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and pre-

7. *See Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co.,* 896 F.Supp. 1197, 1200 (M.D.Fla.1995) (dismissing despite lack of opportunity for extensive pretrial discovery in alternative forum); *Carnival Cruise Lines,* 159 B.R. at 991 (dismissing despite complete lack of opportunity for discovery).

8. *See Potomac Capital Invest. Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V.,* 1998 WL 92416, *5 (S.D.N.Y.1998) (Netherlands was adequate forum despite fact that it offered "nothing approaching the discovery rights ... under the" Fed.R.Civ.P.); *Manela v. Garantia Banking, Ltd.,* 940 F.Supp. 584, 591 (S.D.N.Y. 1996) ("The unavailability of U.S. style docu-

ment discovery is far from dispositive on the issue of the adequacy of a Brazilian forum.").

9. To the extent that the plaintiffs may need discovery from non-parties located in the United States, it can avail itself of 28 U.S.C. § 1782, which provides discovery assistance to foreign tribunals and to litigants before such tribunals.

10. It may be, as the plaintiffs allege, that it is the Greek government which has not abided by the terms of the license agreement. The court does not pass on the merits of that contention, however, because that matter is more appropriately decided by the courts of Greece.

dictability essential to any international business transaction. *Scherk*, 417 U.S. at 516, 94 S.Ct. 2449.[11] Moreover, "a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought, sparing litigants the time and expense of pretrial motions to determine the correct forum ...." *Asia North America Eastbound Rate Agreement v. Pacific Champion Service Corp.*, 864 F.Supp. 195, 199 (D.D.C.1994) (quoting *Carnival Cruise Lines*, 499 U.S. at 592, 111 S.Ct. 1522). In light of these policies, there is nothing inherently objectionable about the Greek government seeking the certainty which a forum-selection clause affords. The clause enabled the government to award casino licenses without the prospect of being forced to defend claims in the diverse home courts of the licenseholders. *Cf. Armstrong v. Accrediting Council*, 980 F.Supp. 53, 59 (D.D.C.1997) ("It is both rational and reasonable for a lender to operate consistently under the laws of its home state, rather than to be forced to operate under 51 different laws ...," which would be the result if the court refused to enforce the forum-selection clause), *aff'd*, 168 F.3d 1362 (D.C.Cir.), *am. on den. of reh'g.*, 177 F.3d 1036 (D.C.Cir. 1999).

In short, the plaintiffs have not met the "heavy burden of proof which commercial entities involved in international business transactions must satisfy in order to set aside a valid forum selection clause." *Overseas Partners*, 15 F.Supp.2d at 54–55.[12] Accordingly, the court concludes that the forum-selection clause will be enforced if it is applicable.

### 1. Applicability of the Forum–Selection Clause

To determine whether the forum-selection clause applies, the court turns to the language of the license agreement itself. The Greek government awarded the casino license to the consortium by Resolution 37, which was originally written in Greek. The parties disagree over the proper English translation of Resolution 37's forum-selection clause. In ruling on a motion for summary judgment, the court must accept the evidence of the nonmoving party as true, construe the facts in the light most favorable to the nonmovant and draw all justifiable inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *see also New Moon Shipping Co. v. Man B&W Diesel Ag*, 121 F.3d 24, 29 (2nd Cir.1997) ("[A] party seeking to avoid enforcement of such a contractual clause is also entitled to have the facts viewed in the light most favorable to it ...."); *cf. Banco Del Estado v. Navistar International Transp.*, 954 F.Supp. 1275, 1285 (N.D.Ill.1997) (where parties disagreed over proper translation of Spanish contract term, "the [nonmovant]'s version must be credited" for purposes of motion to dismiss). Accordingly, the court assumes *arguendo* that the plaintiffs' translation of the clause is correct.[13]

11. This matter is "truly international" within the meaning of *Scherk*, 417 U.S. at 515, 94 S.Ct. 2449. *Cf. Lipcon v. Underwriters At Lloyd's, London*, 148 F.3d 1285, 1293 n. 14 (11th Cir.1998) (enforcing clause selecting England as forum where "the parties to the agreement are from different countries [and] the negotiations leading up to the agreement took place in the United States whereas the closing took place in England ...."), *cert. den.*, —— U.S. ——, 119 S.Ct. 851, 142 L.Ed.2d 704 (1999).

12. In support of their argument that the forum-selection clause should be enforced, the defendants repeatedly point out that the consortium received a refund of its license fee. *See* Mot. to Dis. at 10, 11. Whether or not the plaintiffs received a refund, however, is not relevant to the court's determination on this issue.

13. The defendants contend that "the choice of translation does not affect the legal analysis, because the forum selection clause, under either translation, compels dismissal in favor of Greece." Reply in Support of Mot. to Dis. at 2 n.1. The court does not decide whether the clause would warrant dismissal under the defendants' translation.

According to the plaintiffs' translation, the forum-selection clause provides.

> [A]ny dispute or disagreement between the State or the National Tourism Organization and the joint venture [the Marra consortium] arising from the application of this license, the interpretation or performance of its terms, the extent of the rights and obligations of the State and the holder of the license, *and in general any matter that may occur concerning a license, shall be settled by the Greek courts.*

Opp. to Mot. to Dis. at 22 (emphasis added).

The plaintiffs assert, "As with any other contractual provision, in determining the scope of [the forum-selection] clause, courts construe the clause in line with the intent of the parties." Opp. to Mot. to Dis. at 22. Taken in isolation, that is not an accurate statement of the common law governing the construction of contracts. In interpreting a contractual term, the court must

> adhere[ ] to the objective law of contracts, whereby the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake.

*Kyriakopoulos v. George Washington Univ.,* 866 F.2d 438, 444 n. 1 (D.C.Cir. 1989) (quoting *Howard Univ. v. Best,* 484 A.2d 958, 967 (D.C.1984) (internal citations omitted)). "[W]here a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to th[e] words reflects the intentions of the parties and ... will not look to extrinsic evidence of intent to guide the interpretive process." *Amerada Hess Pipeline Corp. v. FERC,* 117 F.3d 596, 604 (D.C.Cir.1997) (citation and internal quotation omitted). There is no evidence to suggest that the forum-selection clause is the result of "fraud or duress", nor do the plaintiffs allege that it was the product of mutual mistake. Therefore, the court will not look beyond "the four corners" of the clause to divine its meaning "unless the written language is not susceptible of a clear and definite undertaking." *See Kyriakopoulos,* 866 F.2d at 444 n. 1.

■ According to the plaintiffs' translation, the forum-selection clause encompasses their claims. The clause concludes with a broad catch-all phrase which holds the revocation issue within its ambit. The clause remits the parties to Greece to litigate "in general any matter that may occur concerning a license. . . ." *See* Opp. to Mot. to Dis. at 22. The claim that a license was unlawfully revoked plainly qualifies as "a matter ... concerning a license."

In short, the language of the clause is not ambiguous. "Therefore, the Court need not, and indeed may not, go beyond the text of the contract in its interpretation." *Overseas Partners,* 15 F.Supp.2d at 52 (enforcing "clear" forum-selection clause in breach-of-contract action and refusing to consider document which postdated contract); *accord American Home Prods. v. Liberty Mut. Ins. Co.,* 748 F.2d 760, 765 (2d Cir.1984). Consequently, the court will not consider the evidence proffered by the plaintiffs in support of their argument that the parties did not intend the forum-selection clause to apply to this dispute.

Because the plaintiffs have not shown that the forum-selection clause is unenforceable or inapplicable, refusal to enforce the clause "would not only allow the [plaintiff] to repudiate its solemn promise but would, as well, reflect a parochial concept that all disputes must be resolved under our laws and in our courts." *Matter of Cromalloy Aeroservices,* 939 F.Supp. 907, 911 (D.D.C.1996). Accordingly, the court concludes that the license agreement obligates plaintiffs to bring these claims only in the courts of Greece.

### 2. Applicability of the Forum–Selection Clause to Ms. Marra

 Marrecon is bound by the clause because it is a member of the consortium that signed the license agreement. Although Ms. Marra was not a party to the agreement, she is bound by the clause as the owner of Marrecon. A non-party is bound by a contract term if it is "closely related to the dispute such that it becomes foreseeable that it will be bound." *Manetti–Farrow, Inc. v. Gucci America*, 858 F.2d 509, 514 n. 5 (9th Cir.1988); *accord Lipcon v. Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir.1998); *Hugel v. Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993).

### 3. The Court Attaches Conditions to the Dismissal to Protect the Plaintiffs' Ability to Bring Suit in Greece

As with dismissal under the doctrine of *forum non conveniens*, the court's final task is to "ensure that [Marra] can reinstate [her] suit in [Greece] without undue convenience or prejudice." *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 679 (D.C.Cir.1996). To effectuate this purpose, the court will attach two conditions to its order of dismissal.

First, defendants must appoint an agent to receive service of process in New York or the District of Columbia for suit in Greece. *See id.* at 679 ("[T]he court may condition a dismissal on [defendant]'s agreement to be served in the District of Columbia for suit in Jordan.").

Second, the court recognizes that applicable limitations periods established by Greek law may have expired during the pendency of this action. Accordingly, the defendants must agree to waive any statute of limitations or laches defense in any action which the plaintiffs file in Greece related to this dispute within six months from the instant dismissal. *See Pain v. United Technologies Corp.*, 637 F.2d 775, 780 (D.C.Cir.1980), *cert. den.*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *see also Hodes v. S.N.C. Achille Lauro*, 858 F.2d 905, 916 (3d Cir.1988), *cert. dis.*, 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989); *Fluoroware, Inc. v. Dainichi Shoji K.K.*, 999 F.Supp. 1265, 1271 (D.Minn.1997); *cf. Krol v. AAMCO Transmissions, Inc.*, 1991 WL 276006 (E.D.Pa.1991) (enforcement of forum-selection clause unreasonable when it would result in the plaintiff's claims being time-barred). In the event that the defendants fail to comply with these conditions, this court reserves the right to vacate its order of dismissal and reinstate this action for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that the forum-selection clause in the consortium's license agreement is enforceable and applies to this dispute. Accordingly, the court shall grant summary judgment to the defendants and dismiss the complaint with prejudice subject to the conditions set forth in the order.

An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 27 day of July, 1999.

### ORDER

**Granting the Defendants' Motion to Dismiss Pursuant to the Contractual Forum Selection Clause**

For the reasons set forth in this court's separately and contemporaneously issued Memorandum Opinion,

it is this 26th day of July, 1999

**ORDERED** that the mandatory forum-selection clause set forth in Article 7 of Ministerial Decision and Approval No. 37 of the Hellenic Republic of Greece, dated January 31, 1995, shall be and hereby is enforced; and it is

**FURTHER ORDERED** that the complaint of the plaintiffs, Rosemarie Marra and Marrecon Enterprises S.A., shall be and hereby is dismissed with prejudice

pursuant to said clause, subject to the conditions set forth below; and it is

**FURTHER ORDERED** that no later than August 15, 1999 the defendants shall collectively designate one agent to receive service of process in the District of Columbia or New York City for any lawsuit related to this dispute which the plaintiffs may choose to file in the courts of Greece; and it is

**FURTHER ORDERED** that the defendants shall waive any statute-of-limitations or laches defense which they might otherwise be entitled to assert in any action which the plaintiffs file in the courts of Greece related to this dispute within six months of the date of this order; and it is

**FURTHER ORDERED** that the defendants shall file with this court, by Wednesday, August 4, 1999, a writing dated and signed by a representative of each defendant acknowledging and consenting to the terms of this order; and it is

**FURTHER ORDERED** that if the plaintiffs notify the court that the defendants have failed to comply with the above conditions, the court shall be entitled to require the defendants to rebut the allegation of noncompliance by written submission, by appearing in court or both; and it is

**FURTHER ORDERED** that if the court finds that the defendants have failed to comply with the above conditions, the court shall have the discretion to vacate this order of dismissal and reinstate this action for further proceedings in this court; and it is

**FURTHER ORDERED** that the court retains jurisdiction to the extent necessary to enforce the terms of this order.

**SO ORDERED.**