**EMPLOYERS INSURANCE COMPANY OF WAUSAU, f/k/a Employers Insurance of Wausau, A Mutual Company, Plaintiff,**

v.

**EQUITAS HOLDINGS LIMITED, Equitas Reinsurance Limited, Equitas Limited, Certain Underwriters at Lloyd's, London, Lloyd's of London Syndicate Numbers 43, 51, 56, 91, 99, 109, 126, 144, 182, 183, 190, 205, 219, 226, 227, 235, 246, 257, 263, 269, 278, 279, 322, 342, 362, 365, 376, 383, 391, 408, 417, 435, 452, 471, 484, 489, 509, 510, 518, 544, 553, 557, 570, 582, 584, 605, 618, 620, 650, 661, 674, 694, 701, 727, 780, 782, 799, 807, 825, 830, 846, 918, 923, 939, 940, 947, 948, 987, 989 and 990, Defendants.**

No. 06–C–291–C.

United States District Court,
W.D. Wisconsin.

Sept. 12, 2006.

Timothy J. Muldowney, La Follette, Godfrey & Kahn, S.C., Madison, WI, Kevin E. Wolf, Ruder Ware, Wausau, WI, for Plaintiff.

James R. Troupis, Michael Best & Friedrich, LLP, Robert E. Shumaker, Dewitt, Ross & Stevens, Madison, WI, John B. Haarlow, Lord, Bissell & Brook LLP, Chicago, IL, Robert I. Westerfield, Bowles & Verna LLP, Walnut Creek, CA, for Defendants.

## OPINION and ORDER

CRABB, District Judge.

In this civil action for declaratory or monetary relief, plaintiff Employers Insurance Company of Wausau contends that certain defendant underwriters of Lloyd's, London constituting syndicate numbers 43, 51, 56, 91, 99, 109, 126, 144, 182, 183, 190, 205, 219, 226, 227, 235, 246, 257, 263, 269, 278, 279, 322, 342, 362, 365, 376, 383, 391, 408, 417, 435, 452, 471, 484, 489, 509, 510, 518, 544, 553, 557, 570, 582, 584, 605, 618, 620, 650, 661, 674, 694, 701, 727, 780, 782, 799, 807, 825, 830, 846, 918, 923, 939, 940, 947, 948, 987, 989 and 990 have breached their duty to pay claims arising out of various reinsurance contracts between plaintiff and those defendants. For reasons that will be described in detail below, plaintiff has brought suit also against de-

fendants Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited, the reinsurers of the defendant Lloyd's underwriters. (Because the pending motion involves only the Equitas defendants, all references to "defendants" in this opinion will be to Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited, unless otherwise indicated.) Plaintiff seeks an order of arbitration under 9 U.S.C. § 203. Jurisdiction is present under 28 U.S.C. § 1331.

Now before the court is defendants Equitas Holdings Limited's, Equitas Reinsurance Limited's and Equitas Limited's motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim. This is not the first time defendants have argued that courts in this district lack personal jurisdiction over them. In Case Nos. 97–C–409–C and 05–C–124–S, defendants brought similar motions in similar lawsuits. Both times the motions were denied. Perhaps it is true that the third time's a charm; after reviewing the current law and reconsidering my earlier decision, I have become persuaded that defendants' position is correct: this court lacks personal jurisdiction over them. Consequently, defendants' motion will granted and they will be dismissed from this lawsuit.

I draw the following jurisdictional facts from the pleadings and attachments to them, the parties' affidavits and publicly available records of the parties' past litigation in this district.

## JURISDICTIONAL FACTS

### A. *Parties*

Plaintiff Employers Insurance Company of Wausau is a Wisconsin corporation with its principal place of business in Wausau, Wisconsin.

Defendant Equitas Holdings Limited is a private limited company organized under the laws of England. It is a holding company and is not an authorized insurance or reinsurance company.

Defendants Equitas Reinsurance Limited and Equitas Limited are private limited companies organized under the laws of England. Defendant Equitas Limited is a wholly owned subsidiary of defendant Equitas Reinsurance Limited and is the only Equitas company engaged in handling claims.

### B. *Plaintiff's Reinsurance Contract with Lloyd's Names*

Lloyd's of London is a 300–year–old market in which individual and corporate underwriters known as "Names" underwrite insurance. *Haynsworth v. The Corporation,* 121 F.3d 956, 958 (5th Cir.1997). The Society of Lloyd's provides the building and personnel necessary to the market's administrative operations. *Id.* The corporation is run by the Council of Lloyd's, which promulgates "Byelaws," regulates the market, and generally controls Lloyd's administrative functions. *Id.*

Lloyd's does not underwrite insurance; the Names do so by forming groups known as syndicates. *Id.* at 959. Within each syndicate, participating Names underwrite for their own accounts and at their own risk. *Id.* Under English law, Names' liability is several rather than joint; individual Names are not responsible for the unfulfilled obligations of others. *Id.* Syndicates have no legal existence or identity apart from the Names they comprise. *Id.*

Plaintiff is an insurance company that sells general liability policies. In the late 1970s, plaintiff entered into a number of reinsurance contracts with various Lloyd's Names. Under these contracts, the Names agreed to indemnify plaintiff for a share of plaintiff's losses and expenses incurred in connection with the casualty insurance policies plaintiff issued.

The "Casualty Excess of Loss Reinsurance Agreement" at issue in this lawsuit contains the following selection of suit clause:

> In the event of the failure of Reinsurers hereon or any of them to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of [Wausau], will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. .

Dkt. # 2, Exh. 1, at 15. The contract also contains an arbitration provision that reads:

> As a precedent to any right of action hereunder, if any dispute shall arise between the Company and the Reinsurers with reference to the interpretation of this Agreement or their rights with respect to any transaction involved ... such dispute, upon written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen.

In November 1995, the Masonite Corporation, one of plaintiff's insureds, sued plaintiff, seeking coverage for claims made under one of its insurance policies. The case settled for $75,000,000. Plaintiff has billed defendants for its losses, but they have refused to pay the claims. Consequently, plaintiff has filed this lawsuit.

### C. *Relationship Between Lloyd's Defendants and Equitas Defendants*

During the late 1980's and early 1990's, Lloyd's underwriters incurred approximately $22 billion dollars in losses, attributable in large part to unanticipated losses from asbestosis and pollution claims, together with a string of catastrophic events such as Hurricane Hugo and the bombing of Pan Am Flight 103. *Allen v. Lloyd's of London,* 94 F.3d 923, 927 (4th Cir.1996). To insure the survival of the market and the payment of policyholders' claims, as well as to protect the Names, Lloyd's devised a Reconstruction and Renewal plan, with two major components: (1) the settlement of intra-market litigation whereby the Names released all claims against Lloyd's and its various market participants in exchange for $4.8 billion in credits and (2) the reinsurance of the Names' pre–1993 underwriting obligations by a newly formed company, defendant Equitas Reinsurance Ltd. Under the Plan, Equitas's capital was to be funded by loans, a cash call on Names, and the $4.8 billion in credits assembled by Lloyd's for the settlement of the Names' claims.

Equitas was to provide reinsurance for all the Names' pre–1993 liabilities through a contract, known as the Reinsurance and Run–Off contract. The contract provides:

> This Agreement is to take effect as a contract of reinsurance and shall have no effect on the liability of any Name or Closed Year Name under any original contract of insurance entered into by such Name or Closed Year Name. The liability of the relevant Names or Closed Year Names under all contracts of insurance underwritten by them shall remain several and not joint.

Dkt. # 14, Exh. 1, at 3. In addition, the contract states explicitly: "This Agreement is not intended to and does not create any third party beneficiary status in, or confer any third party beneficiary rights upon, Insurance Creditors or any other persons with respect to this agreement." An insurance creditor is defined by the agreement as "any policyholder under any contract of insurance underwritten by a Syndicate."

Although the contract disclaims liability to individuals directly insured by Lloyd's, its provisions vest defendants Equitas Reinsurance Limited and Equitas Limited with "exclusive and irrevocable responsibility" for managing all insurance claims involving pre–1992 business. *Id.* at 21. The contract provides that defendants Equitas Reinsurance Limited and Equitas Limited will act "as agent of the Names and Closed Year Names." Nevertheless, other contract provisions specify that defendant Equitas Reinsurance Limited "shall manage each Run–Off as if it were the principal" and that "Equitas Reinsurance Limited and its delegates and subdelegates are not bound to comply with any instructions or requests of any Name or Closed Year Name" and that "in no circumstances will any Name or any Closed Year Name interfere with the exercise of the management or control of any Run–Off." *Id.* at 24. The contract confers on the Equitas defendants "absolute discretion" to:

(a) adjust, handle, agree, settle, compromise or repudiate any Claim, return premium, reinsurance premium or any other insurance or reinsurance liability on behalf of the Syndicate or Closed Year Syndicate;

(b) adjust, handle, agree, settle, pay, compromise or repudiate any other liability, outgoing or expense of the Syndicates or Closed Year Syndicate of whatever nature and whenever arising without limitation in time and amount;

(c) agree to any variation or extension of existing contracts if insurance or reinsurance entered into by or on behalf of the Syndicate or Closed Year Syndicate and to set additional premium payable by the insured or reinsured unless already fixed under the terms of the original insurance or reinsurance;

(d) commence, conduct, pursue, prosecute, settle, appeal or compromise any Legal Proceedings on behalf of the Syndicate or Closed Year Syndicate or any

Name or to defend any such proceedings taken against the Syndicate or Closed Year Syndicate or any Name or Closed Year Name in which any outcome will by virtue of this Agreement be for the account of E[quitas] R[einsurance] L[imited] including the provision of any security in respect of such proceedings....

*Id.* at 21–22.

The Reinsurance and Run–Off contract provides that all questions relating to its validity and construction are to be "governed by and construed in accordance with the laws of England." *Id.* at 32.

Although the Reinsurance and Run–Off contract was designed to provide some measure of finality to the Lloyd's Names, it could not guarantee absolute finality. Before the contract took effect, Lloyd's circulated its entire Plan to each Name and offered it the opportunity to settle with Lloyd's for a specified share of the settlement funds. *Allen,* 94 F.3d at 927. The settlement offer described the effect of the Reinsurance and Run–Off contract in this way:

It is not within the power of Lloyd's to grant Names an absolute release from their liabilities to policyholders. Despite the reserve strengthening agreed with the DTI and the board of Equitas, there will still be a residual risk for Names of failure by Equitas to pay in full liabilities in respect of 1992 and prior business ... If Equitas determines that it has insufficient assets and becomes unable to meet the 1992 and prior liabilities in full as they fall due, it may decide to implement a proportionate cover plan under the provisions set out in the Reinsurance Contract. In this regard, the following points should be noted.... Residual liability. [A]s Names retain the ultimate liability to policyholders, they would therefore remain liable for the proportion of a claim not met by Equi-

tas, if Equitas were to invoke proportionate cover.

Dkt. #19, Exh. 7, at 112, 144. Under the Plan, any capital remaining after Equitas has satisfied all outstanding pre–1993 obligations will be returned to the Names. *Allen*, 94 F.3d at 927.

### D. *The Equitas Defendants and Wisconsin*

None of the Equitas companies has a registered agent for service of process located in Wisconsin. The Equitas companies have not sought to be licensed or authorized to do business in Wisconsin. They have never maintained an office, owned or leased property, maintained a bank account or postal address here, advertised, paid taxes or commenced a lawsuit in Wisconsin. None of the companies' directors, officers or employees resides in the state.

### E. *Prior Litigation Between the Parties*

In 1997, plaintiff (then known as Employers Insurance of Wausau, a Mutual Company) brought suit in this court against a plethora of defendants, including various Lloyd's underwriters and defendants Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited. In that lawsuit, Case No. 97–C–409–C, plaintiff asked the court to order both the Equitas and Lloyd's defendants to engage in arbitration with plaintiff under the terms of plaintiff's insurance contracts with the Lloyd's syndicates. Defendants moved to be dismissed from the case, alleging that this court lacked personal jurisdiction over them because they were not parties to the contracts plaintiff sought to arbitrate.

In an order dated October 27, 1997, I held that this court could exercise personal jurisdiction over defendants. *Employers Ins. Co. of Wausau v. Certain London Market Companies*, 1997 WL 1134980 (W.D.Wis. Oct. 27, 1997) (*"Employers I"*).

Later, in an order dated February 10, 1998, I ordered the parties to arbitrate their dispute under the terms of the contract. I did not enter judgment immediately, however. Instead, I retained jurisdiction over the case until the parties had begun arbitration proceedings and an umpire was selected to arbitrate their dispute. After an umpire was appointed, the case was closed.

Last year, in Case No. 05–C–124–S, plaintiff brought a second lawsuit in this district against defendants Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited. In an order dated June 30, 2005, Judge John Shabaz denied defendants' motion to dismiss the suit for lack of personal jurisdiction or for failure to state a claim under Fed. R.Civ.P. 12(b)(6). *Employers Ins. Co. of Wausau v. Certain Underwriters at Lloyd's London*, 2005 WL 1563331, *4 (W.D.Wis. June 30, 2005) (*"Employers II"*). Adopting the reasoning employed by this court in *Employers I*, Judge Shabaz found that the court could exercise personal jurisdiction over the Equitas defendants under Wisconsin law. *Id.* Shortly after Judge Shabaz declined to dismiss defendants from the case, the parties settled their dispute out of court. Because the case settled, no appeal was taken.

### OPINION

### A. *Preclusion*

Before the court may address the substantive or procedural challenges raised by defendants' motion to dismiss, a threshold question must be answered: Does the doctrine of issue preclusion or claim preclusion bar defendants from bringing the pending motion at all? Plaintiff contends that defendants' motion to dismiss should be denied outright because it raises the same legal challenges under Fed.R.Civ.P. 12(b)(2) that courts within this district

have resolved in plaintiff's favor twice previously, and is barred therefore by both collateral estoppel (issue preclusion) and *res judicata* (claim preclusion).

Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Under the related doctrine of issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Id.*

### 1. *Claim preclusion*

■ In general, "[t]he doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *Perkins v. Board of Trustees of the Univ. of Ill.,* 116 F.3d 235, 236 (7th Cir.1997). The doctrine bars a subsequent suit if the claim upon which the suit is based arises from the "same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman,* 164 F.3d 1059, 1062 (7th Cir.1999). The three requirements of claim preclusion under federal law are: (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits. *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.,* 296 F.3d 624, 628 (7th Cir.2002). When these elements are satisfied, the judgment in the earlier suit bars further litigation of issues that were either raised or could have been raised therein. *Kratville v. Runyon,* 90 F.3d 195, 197–98 (7th Cir.1996).

■ Although plaintiff asserts that claim preclusion applies in this case, it is mistaken. The claims being litigated in this lawsuit are ones plaintiff itself has brought. They have not been litigated previously. Because there is no identity between the causes of action at issue in this lawsuit and in previous ones, claim preclusion cannot bar defendants from raising the issue of personal jurisdiction.

### 2. *Issue preclusion*

■ Defendants' motion invites the court to consider an issue, not decide a claim. Therefore, the proper question is whether the doctrine of issue preclusion bars defendants from relitigating the issue of personal jurisdiction in the context of this lawsuit. The doctrine of issue preclusion is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* at 94, 101 S.Ct. 411. Under federal law, issue preclusion prevents relitigation of a previously decided issue when (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Washington Group International, Inc. v. Bell, Boyd & Lloyd LLC,* 383 F.3d 633, 636 (7th Cir.2004). For purposes of issue preclusion, a " 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation,* 333 F.3d 763, 767 (7th Cir.2003).

The parties agree that in both Case No. 97–C–409–C and Case No. 05–C–124–S, defendants' counsel raised arguments regarding personal jurisdiction similar to those they have raised in this lawsuit.

Moreover, it is undisputed that personal jurisdiction was an essential prerequisite to the court's decision to order arbitration in Case No. 97–C–409–C. Ordinarily, these facts would counsel in favor of applying issue preclusion to the question of exercising personal jurisdiction over these defendants.

■ However, even when "an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded when the party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." *Kircher v. Putnam Funds Trust,* — U.S. —, —, 126 S.Ct. 2145, 2157, 165 L.Ed.2d 92 (2006) (citing *Restatement (Second) of Judgments* § 28(1) (1980)); *see also Standefer v. United States,* 447 U.S. 10, 23, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) ("Contemporary principles of collateral estoppel strongly militate against giving an unreviewable judgment preclusive effect."). Defendants assert that they were unable to appeal the issue of personal jurisdiction in either Case Nos. 97–C–49–C or 05–C–124–S. Therefore, they assert, neither decision should have the effect of now precluding litigation on the question whether this court has personal jurisdiction over them.

■ At the time this court found it had personal jurisdiction over the Equitas defendants and ordered them to engage in arbitration with plaintiff, the law of this circuit forbade defendants from taking an interlocutory appeal of an arbitration order under the circumstances present in Case No. 97–C–409–C. *Napleton v. General Motors Corp.,* 138 F.3d 1209, 1212 (7th Cir.1998) ("[W]e have ... declined to find jurisdiction over an appeal from an embedded proceeding when the practical result of the order to arbitrate was to refer all claims to the arbitrator and terminate proceedings before the district court."), *abrogated by Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Although such a decision would be appealable today under *Green Tree,* defendants had no means of obtaining appellate review of this court's decision in 1997. Consequently, this court's decision in Case No. 97–C–409–C does not preclude defendants from raising the issue of personal jurisdiction in this lawsuit.

■ The second case upon which plaintiff's assertion of issue preclusion rests is Case No.2005–C–124–S. In that case, the Lloyd's defendants reached a settlement with plaintiff shortly after the court held that it could exercise personal jurisdiction over defendants. The United States Supreme Court has explained that

settlements ordinarily occasion no issue preclusion (sometimes called collateral estoppel), unless it is clear ... that the parties intend their agreement to have such an effect. In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion. This differentiation is grounded in basic *res judicata* doctrine. It is the general rule that issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, [issue preclusion] does not apply with respect to any issue in a subsequent action.

*Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (citing *Restatement (Second) of Judgments* § 27, p. 250, 257 (1982)); *see also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443, pp. 384–385 (1981). Neither party has suggested that the settlement in Case No. 05–C–124–S indicated clearly that the parties intended the settlement to preclude further litigation on the question of personal jurisdiction. Therefore, the decision rendered in that case does not bar defendants from relitigating the issue.

Because the decisions to exercise personal jurisdiction over defendants in Case Nos. 97–C–409–C and 05–C–124–S were not appealable, I find that issue preclusion does not bar the court from considering the merits of the present motion.

### B. *Personal Jurisdiction*

■ It is well established that before a court may resolve a case on its merits, it must have authority over both the claim and the parties before it. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). "The requirement that jurisdiction be established as a threshold matter .... is inflexible and without exception." *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Therefore, the next question to be resolved is whether this court may exercise personal jurisdiction over defendants Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited.

■ "A federal district court .... has personal jurisdiction over a non-consenting, nonresident defendant if and only if a court of the state in which the district court is sitting would have such jurisdiction." *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 664–665 (7th Cir.1986). Therefore, the jurisdictional inquiry must begin with an examination of the law of the forum state, which in this case is Wisconsin. Under Wisconsin law, jurisdiction may arise "through any one or more of the grounds stated in Wisconsin's long-arm statute, [Wis. Stat.] § 801.05 ... or by consent." *Kohler Co. v. Wixen,* 204 Wis.2d 327, 336, 555 N.W.2d 640, 644 (Ct.App. 1996). Plaintiff asserts that defendants have consented to jurisdiction over them (1) by virtue of the Reinsurance and Run-off contract with the Lloyd's defendants and (2) under Wis. Stat. § 801.05(10)(a).

### 1. *Consent*

When this court exercised personal jurisdiction over defendants in 1997, it do so by determining that the Equitas defendants were bound by the selection of suit clauses found in plaintiff's insurance contracts with the Lloyd's defendants. If the Equitas defendants were bound by the clause, they would be subject to jurisdiction in this court because, under Wisconsin law, a valid forum selection clause is a means of consenting to personal jurisdiction in the selected forum. *Kohler Co.,* 204 Wis.2d at 337, 555 N.W.2d 640. To understand why this court reached the conclusion it did, it is first necessary to discuss the relationship between the Lloyd's and Equitas defendants and whether the Reinsurance and Run-off contract between the Lloyd's defendants and Equitas defendants is an assumption agreement, as plaintiff contends, or whether it is an indemnity agreement, as the Equitas defendants assert. The difference matters.

> Reinsurance comes in two basic types, assumption reinsurance and indemnity reinsurance. In the case of assumption reinsurance, the reinsurer steps into the shoes of the ceding company with respect to the reinsured policy, assuming all its liabilities and its responsibility to maintain required reserves against potential claims. The assumption reinsurer thereafter receives all premiums di-

rectly and becomes directly liable to the holders of the policies it has reinsured. In indemnity reinsurance ... it is the ceding company that remains directly liable to its policyholders, and that continues to pay claims and collect premiums. The indemnity reinsurer assumes no direct liability to the policyholders. *Colonial American Life Ins. Co. v. Commissioner of Internal Revenue,* 491 U.S. 244, 247, 109 S.Ct. 2408, 105 L.Ed.2d 199 (1989).

▮▮▮ Plaintiff's reinsurance agreement with the Lloyd's defendants contains a selection of suit clause that permits this court to exercise personal jurisdiction over the Lloyd's defendants. If the Equitas defendants have assumed the responsibilities of the Lloyd's defendants with respect to those reinsurance agreements, that is, if the Equitas defendants are the "successors-in-interest" to the Lloyd's defendants, then it would be proper to apply the selection of suit clause to the Equitas defendants and exercise personal jurisdiction over them. On the other hand, if the Equitas defendants are merely indemnity reinsurers and agents of the defendants, there is no ground for holding them liable to insureds such as plaintiff with whom the Equitas defendants are not in privity of contract.

As a general rule, reinsurance contracts are contracts of indemnity, which give the original assured no right of action against the reinsurer. *China Union Lines, Ltd. v. American Marine Underwriters, Inc.,* 755 F.2d 26, 30 (2d Cir.1985); *see also* Lee R. Russ, *Couch on Insurance* § 9.28 (3d ed.2000). However, under Wisconsin law, "the meaning of an agreement between one insurance company and another is not to be determined by the caption but rather from the provisions and term of the contract itself." *Ott v. All–Star Insurance Corp.,* 99 Wis.2d 635, 645, 299 N.W.2d 839, 844 (1981). What makes this case difficult

is the fact that the provisions of the Reinsurance and Run-off contract are neither traditional indemnity nor assumption contracts, but a hybrid. Like an indemnity contract, the Reinsurance and Run-off contract contained a disclaimer by the Equitas defendant of all liability "under any original contract of insurance entered into by [any] Name." Moreover, the agreement states that all actions taken by the Equitas defendants with respect to the Lloyd's defendants claims will be undertaken in an agency role only. However, like an assumption contract, the Reinsurance and Run–Off contract gives the Equitas defendants "exclusive and irrevocable responsibility" for managing all reinsured claims "as though it were principal."

Across the country, at both the federal and state level, courts are split on the question whether Equitas is an indemnity or assumption reinsurer. Courts in Kentucky, Pennsylvania, New York, Idaho, Wisconsin, Colorado, Washington, Ohio and Minnesota have held that the Reinsurance and Run–Off contract is a traditional indemnity contract that does not render the Equitas defendants liable to those insured directly by Lloyd's. *Millennium Petrochemicals, Inc. v. C.J. Jago,* 50 F.Supp.2d 654, 659 (W.D.Ky.1999); *USX Corp. v. Adriatic Ins. Co.,* 64 F.Supp.2d 469, 479 (W.D.Pa.1998); *Long Island Lighting Co. v. Aetna Casualty and Surety Co.,* 1997 WL 567342, *3 (S.D.N.Y. Sept. 11, 1997); *Idaho Power Co. v. Underwriters at Lloyd's London,* No. 97–0203–S–BLW, 6 (D.Id. Mar. 31, 1999); *Archdiocese of Milwaukee v. Certain Underwriters at Lloyd's London,* No. 96–CV–006626 (Wis. Cir. Ct. Milwaukee Cty. July 12, 1999); *Union Pacific Railroad v. Equitas Limited,* 987 P.2d 954, 956–57 (Colo.Ct.App. 1999); *Boeing Co. v. Underwriters at Lloyd's,* No. 99–03873–8 SEA, 3 (Wash.Super. Ct. King Cty. Dec. 16, 1999); *B.F. Goodrich Co. v. Commercial Union Ins.*

*Co.,* No. CV 99 02 0410, 2 (Ohio Ct. Common Pleas Summit Cty. Oct. 14, 1999); *First State Ins. Co. v. Minnesota Mining & Manufacturing Co.,* No. C3–94–12780, 6 (Minn. Dist. Ct. Ramsey Cty. May 1, 1997).

On the other hand, courts in Maine and New Jersey have held that the agreement is an assumption contract that authorizes insureds to bring suit against the Equitas defendants directly. *Central Maine Power Co. v. Moore,* No. CV–93–489 (Me.Super. Ct. Kennebec Cty. Jan. 10, 2000); *Employers Mutual Casualty Co. v. Owens Ins., Ltd.,* No. MRS–C–51–96 (N.J.Super. Ct. Morris Cty. Nov. 10, 1999); *Unisys v. Insurance Co. of North America,* No. L–1434–94 S (N.J. Super Ct. Middlesex Cty. Dec. 20, 1999); *Uniroyal Inc. v. American Reinsurance Co.,* No. L–8172–94 (N.J.Super. Ct. Middlesex Cty. Jul. 9, 1999); *GAF Corp. v. Hartford Accident & Indemnity Co.,* No. SOM L–980–97 (N.J.Super. Ct. Somerset Cty. Mar. 31, 2000); *RCA Corp. v. Certain Underwriters at Lloyd's London,* No. L–88–6432 (N.J.Super. Ct. Mercer Cty. Jul. 6, 2000).

In both *Employers I* and *Employers II,* the courts in this district avoided answering the question whether the Reinsurance and Run-off contract is an indemnity or assumption agreement and took a different approach entirely. Instead of classifying the contract, the courts focused on whether the contract created a relationship between the Lloyd's and Equitas defendants that was so "closely related" to the Lloyd's defendants' insurance contracts with plaintiff that it would be "foreseeable" to defendants that they might be bound by the selection of suit clauses in plaintiff's contracts. In taking this approach, the courts relied heavily on *Hugel v. Corp. of Lloyd's,* 999 F.2d 206 (7th Cir.1993). Because the case played a dominant role in the decisions in *Employers I* and *Employers II,* a brief summary of its operative facts is in order.

Dietrich Hugel was the president and chairman of Gulf Coast Marine, Inc. and Ocean Marine Indemnity Company, two insurance brokerage firms in New Orleans, Louisiana. *Hugel,* 999 F.2d at 207. Hugel owned 99% of the stock in Gulf Coast Marine and 100% of the stock of Ocean Marine Indemnity. *Id.* When he became a member of Lloyd's in the 1980's, he signed a contract containing a forum selection clause in which he agreed to litigate in British courts all disputes arising from his membership in Lloyd's. *Id.*

Several years later, Lloyd's began to suspect that Hugel and Gulf Coast Marine were involved in criminal misconduct. *Id.* Lloyd's launched an investigation during which Hugel provided testimony and documents relating to Gulf Coast Marine. *Id.* Later, Lloyd's allegedly leaked these confidential documents, resulting in losses to Hugel, Gulf Coast Marine and Ocean Marine Indemnity, all of whom sued Lloyd's in federal court. *Id.* Lloyd's moved to dismiss the case, contending that the forum selection clause barred any of the plaintiffs from filing their action outside Britain. *Id.* The court granted the motion and dismissed the lawsuit. *Id.*

On appeal, Gulf Coast Marine and Ocean Marine Indemnity asserted that although Hugel might be bound to the forum selection clause in his contract with Lloyd's, they could not be bound to it because they were not parties to the contract. *Id.* at 209. The court of appeals disagreed, stating:

In order to bind a non-party to a forum selection clause, the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound. Hugel is President and Chairman of the Board of both G[ulf] C[oast] M[arine] and O[cean] M[arine] I[ndemnity]. In addition, Hugel owns 99% of the stock of GCM which, in turn, owns

100% of the stock of OMI. The alleged assurances of confidentiality were made to Hugel alone and Hugel alone decided that his corporations would participate in Lloyd's investigation. Hugel and Lloyd's contracted to settle all of their disputes in England. Although GCM and OMI were not members of Lloyd's, in the course of a dispute between Hugel and Lloyd's, Hugel alone involved his two controlled corporations and supplied information allegedly belonging to those corporations. The district court found that the corporations owned and controlled by Hugel are so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue. We hold these findings are not clearly erroneous.

*Id.* at 209–210.

In finding that the Equitas defendants could be bound to the selection of suit clause contained in plaintiff's contract with the Lloyd's defendants, this court focused on the central holding in *Hugel:* that "in order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." *Id.* But what it means to be "closely related" or for enforcement of a forum selection clause to be "foreseeable" is not self-evident. *Frietsch v. Refco, Inc.,* 56 F.3d 825, 827 (7th Cir.1995) ("['closely related'] is not an illuminating phrase; nor is recasting it as an issue of 'foreseeability' much of a help."). Cases applying the "closely related" test have almost exclusively involved suits brought by plaintiffs who are bound by a clearly common interest, such as the corporations and plaintiff-owner in *Hugel,* spouses in *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998), and affiliated companies in *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.,* 364 F.3d 884, 889 (7th Cir.2004). With the exception of

*Employers I* and *Employers II,* none have involved defendants who are related merely by virtue of a reinsurance agreement.

In determining that the Equitas defendants were "closely related" to the Lloyd's defendants, this court focused on the facts that were before it in 1997. What appeared relevant from those facts was the degree to which the Equitas defendants appeared to have stepped into the role of the Lloyd's defendants by virtue of the nearly unfettered powers conferred on them by the Reinsurance and Run-off contract. Looking to those powers, this court held:

> Equitas was formed to represent the interests of the Names and to provide the Names with finality in pre–1993 matters. It must be closely related to defendant Names and the claims against the Names. How could a party not closely related be capable of providing the Names with finality? Adding support for this finding is the fact that Equitas has agreed to indemnify Names for losses arising from disputes, such as those between plaintiff and defendant Names. Last, and most significant to the existence of a close relationship between defendant Names and Equitas, Equitas has assumed control over all litigation relating to disputes over defendant Names' pre–1993 policies. Such a broad grant of authority makes Equitas closely related to the dispute.

*Employers I,* 1997 WL 1134980 at *8. From the facts provided to the court at that time, it appeared that even if the Reinsurance and Run-off contract were not an assumption contract, it conferred on Equitas the power to act as principal with respect to all aspects of plaintiff's reinsurance contract with Lloyd's. For that reason, this court held that by virtue of the role the Equitas defendants had assumed with respect to the pre–1983 policies, the

Equitas defendant were "closely related" to the Lloyd's defendants and could be bound under *Hugel* to the selection of suit clause found in plaintiff's insurance contracts with Lloyd's.

In the present lawsuit, many material facts remain unchanged. The insurance contracts at issue in this suit contain the same selection of suit clause at issue in *Employers I* and *Employers II*. The Reinsurance and Run–Off contract contains the same language it did in 1997. However, it has become increasingly clear not only that this court is in the distinct minority, but that it relied on facts that were not fully developed when it found that the Reinsurance and Run-off contract provided a ground for concluding that the Equitas defendants could be bound by the selection of suit clause contained in plaintiff's insurance contracts, to which the Equitas defendants were not party. As documents submitted for the first time in connection with this lawsuit make clear, "the 'finality' offered by the Reconstruction and Renewal plan [wa]s not absolute," dkt. # 19, Exh. 7, at 112; *see also Millennium Petrochemicals, Inc.*, 50 F.Supp.2d at 662, and the relationship between the Lloyd's and Equitas defendants was not one that would have led the Equitas defendants to reasonably foresee being hauled into court under the selection of suit clauses at issue in this case. As Lloyd's explained to the Names, the contract could not provide them with absolute finality; in the end, the Names alone were ultimately responsible for claims owed to insureds.

There is another reason the Equitas defendants were unlikely to foresee being bound to the Lloyd's defendants' insurance contracts. Under British law, which governs the agreement between the Lloyd's and Equitas defendants, no party may ever be bound to a contract in which strict privity is lacking. *Dunlop Pneumatic Tyre Co. v. Selfridge & Co.*, [1915] A.C. 847, 853 (H.L.) ("[I]n the law of England certain principles are fundamental. One is that only a person who is a party to a contract can sue on it.") In other words, British law would not countenance the idea of "closely related" parties being bound to one another's contracts. The British rule is clear: only signatories to a contract may be held to its provisions. Because the relationship between the Equitas defendants and the Lloyd's defendant was governed explicitly by British law, it would not have been immediately apparent to the Equitas defendants that American courts, applying American law, might bind them to the selection of suit clauses contained in the Lloyd defendants' insurance contracts with insureds such as plaintiff, to which the Equitas defendants were not privy.

In short, I find that the relationship between the Lloyd's defendants and the Equitas defendants is not one that justifies finding the Equitas defendants to be so "closely related" to the insurance contracts between plaintiff and the Lloyd's defendants as to make it reasonably foreseeable to them that they would be bound by the selection of suit clauses. Therefore, *Hugel* does not control the determination of the question of personal jurisdiction. Because *Hugel* was the only case upon which I relied in finding that the Equitas defendants had consented to being sued in the United States and because plaintiff has provided no other persuasive reason for finding in its favor on the issue of consent to jurisdiction, I conclude that defendants have not consented to personal jurisdiction in this court.

### 2. *Wis. Stat. § 801.05*

I turn now to the question whether this court may exercise personal jurisdiction over defendants, notwithstanding their lack of consent. Wisconsin Statutes § 801.05(10)(a) governs the exercise of jurisdiction over nonresident defendants and

permits courts to exercise personal jurisdiction over a nonresident party "in any action which arises out of a promise made anywhere to the plaintiff or some 3rd party by the defendant to insure upon or against the happening of an event and in addition . . . . [t]he person insured was a resident of this state when the event out of which the cause of action is claimed to arise occurred." Plaintiff asserts that this provision covers defendants "because this actions arises out of a promise made to Wausau by Lloyd's and Equitas (by virtue of Equitas's exercise of power and authority given to it by Lloyd's under the Run-Off contract) to insure upon or against the happening of an event." Dkt. # 15 at 23. In other words, plaintiff tries to impute the contractual promises made to it by the Lloyd's defendants to the Equitas defendants. The argument is unavailing.

The insurance "promises" made to plaintiff were the insurance contracts themselves, which were signed by the Lloyd's defendants many years before the Equitas companies came into existence. Plaintiff has not suggested any other "promise" by either the Lloyd's defendants or the Equitas defendants that might form the basis for application of Wis. Stat. § 801.05(10)(a). Defendants made no promise to insure plaintiff; therefore, it would be incorrect to assert personal jurisdiction over the Equitas defendants under Wis. Stat. § 801.05(10)(a).

Plaintiff has suggested no other statutory basis for exercising jurisdiction under Wisconsin's long arm statute. Consequently, in light of the facts now before the court, I conclude that defendants are not subject to the jurisdiction of this court. Plaintiff has stated a claim against the Lloyd's defendants, over whom this court may exercise personal jurisdiction under the selection of suit clause found in the insurance agreement between plaintiff and the Lloyd's defendants. Of that, there is no question. However, I now join the majority of federal courts in concluding that there is no basis on which this court may exercise personal jurisdiction over the Equitas defendants. Their motion to dismiss for lack of personal jurisdiction will be granted.

ORDER

IT IS ORDERED that the motion to dismiss for lack of personal jurisdiction of defendants Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited is GRANTED. Plaintiff's complaint against defendants Equitas Holdings Limited, Equitas Reinsurance Limited and Equitas Limited is DISMISSED.